IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Judge R. Brooke Jackson

Civil Action No. 20-cv-00076-RBJ

ANITA MARTIN,

       Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO, a wholly-owned subsidiary of Xcel Energy, Inc. d/b/a Xcel Energy,

       Defendant.

---

## ORDER

---

This case is before the court on plaintiff Anita Martin's motion to remand all state law claims to state court, ECF No. 12, and defendant Public Service Company of Colorado ("PSCo")'s motion to dismiss, ECF No. 13.  The motions have been fully briefed, and the Court heard oral argument by audio conference on July 16, 2020.  For the reasons set forth below, the motion to remand is denied, and the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Mrs. Martin, a Hispanic and Native American woman, was employed by PSCo from

April 4, 1983 until her retirement on May 31, 2017.  ECF No. 4 at 2.  PSCo, a subsidiary of Xcel

Energy, Inc., provides public utility services in Colorado.  *Id.*

In 1983 Mrs. Martin was hired as a laborer, and in 1987 she was promoted to "pipe

fitter."  *Id.* at 3.  During her employment, Mrs. Martin was the only Hispanic/Native American

female working for defendant as a pipe fitter.  *Id.*  Mrs. Martin alleges she was qualified and next

in line for a promotion to "lead pipe fitter."  *Id.*  In 2016 a lead pipe fitter position became

vacant, and Mrs. Martin inquired about the date of her promotion.  *Id.* at 4.  Mrs. Martin alleges

that PSCo employee Mike Catbagan told Mrs. Martin that "a) she could not be promoted into the

full-time lead pipe fitter position until the vacancy notice was posted; b) she would be promoted

full-time as soon as the vacancy notice was posted because she was next in line for this full-time

promotion; c) she would be assigned part-time as needed to perform lead pipe fitter job duties;

and d) when she performed lead pipe fitter job duties then she would be paid the same hourly

wage as others similarly-situated, i.e., holding the job title and performing full-time the job

duties of lead pipe fitter in her unit – two white males named Randy Ohelert and Bob Ramsey."

*Id.*

Throughout 2016 Mrs. Martin performed lead pipe fitter duties approximately 79.95

hours per month.  *Id.*  In 2017 Mrs. Martin performed lead pipe fitter duties approximately 102.6

hours per month.  *Id.* at 5.

In March of 2017 Mrs. Martin again inquired about being promoted to a full-time lead

pipe fitter position.  *Id.*  Mr. Catbagan allegedly told Mrs. Martin that he would not post the

vacancy notice because he and PSCo employee Randy Jatko "did not want her promoted to the full-time lead pipe fitter position." *Id.* at 5–6. Shortly thereafter Mrs. Martin spoke with Senior Manager of Operations Emir Ahmedic about being denied a promotion. *Id.* at 6. She told Mr. Ahmedic that if she were not promoted she would retire on May 31, 2017. *Id.* Defendant did not post the lead pipe fitter vacancy, and Mrs. Martin retired on May 31, 2017. *Id.* Shortly after Mrs. Martin's retirement two employees were promoted to full-time lead pipe fitter. *Id.*

On December 23, 2019 Mrs. Martin filed this case in Denver District Court, Case No. 2019CV34888. *Id.* at 1. She brought claims for (1) race discrimination under C.R.S. § 24-34-402, Title VII, and 42 U.S.C. § 1981, (2) sex discrimination under C.R.S. § 24-34-402 and Title VII, and (3) a violation of the Equal Pay Act. *Id.* at 7–11.

On January 9, 2020 defendant removed the case to this court under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). ECF No. 1. Mrs. Martin seeks to remand the state law claims to state court, which defendant opposes. ECF Nos. 12, 21. Defendant also moves to dismiss Mrs. Martin's complaint in its entirety. ECF No. 13. Oral arguments were held before this court on July 16, 2020. ECF No. 28.

I address each motion in turn.

### PLAINTIFF'S MOTION TO REMAND STATE LAW CLAIMS

A civil action filed in a state court may be removed to federal court if the dispute "aris[es] under" federal law. 28 U.S.C. §§ 1331, 1441(a). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court has supplemental jurisdiction "over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The removing party bears the burden of establishing federal jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

Mrs. Martin argues that this Court should decline to exercise supplemental jurisdiction over her state law claims under C.R.S. § 24-34-402, the Colorado Anti-Discrimination Act ("CADA"), because they raise a novel or complex issue of state law. ECF No. 12 at 3. Specifically, she alleges that this case raises the issue of what constitutes "pretext" when an employer refuses to post a job vacancy notice. *Id.* Defendant responds that the court has original jurisdiction over Mrs. Martin's state law claims because they are preempted by federal law, and in the alternative, that because this case does not raise a novel issue of state law the court should exercise jurisdiction. ECF No. 21. I will address the preemption argument later in this order.

Section 1367(a) of Title 28 provides that "district courts shall have supplemental jurisdiction over all other [state law] claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Under § 1367(c) a district court may decline to exercise jurisdiction when

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which

it has original jurisdiction, or (4) in exceptional circumstances, there are other
compelling reasons for declining jurisdiction.[1]

28 U.S.C. § 1367(c)(1)–(4).  "In deciding whether to exercise jurisdiction, the district court is to

consider 'judicial economy, convenience, fairness, and comity.'"  *Nielander v. Bd. of Cty.*

*Comm'rs of Cty. of Republic*, 582 F.3d 1155, 1172 (10th Cir. 2009) (quoting *Carnegie–Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The parties do not appear to dispute that Mrs. Martin's CADA claims are part of the same

case or controversy as her federal law claims.  Mrs. Martin instead argues that this Court should

decline to exercise supplemental jurisdiction because, following the amendment of the CADA,

"unsettled questions of state law currently exist."  ECF No. 12 at 3.  Specifically, she points to

the issue of how "Colorado courts will define or describe 'pretext' as it relates to cases wherein a

failure to promote claim is based on refusal to post the job vacancy notice."  *Id.*  This court, Mrs.

Martin argues, should not guess as to how Colorado courts might decide the issue.  *Id.*

Defendant disagrees that this case presents novel issues of state law.  ECF No. 21 at 8.  It

also argues that remanding the CADA claims would not serve the interests of judicial economy

or convenience.  *Id.*

---

[1] Mrs. Martin mischaracterizes this provision as indicating that federal courts "*should* decline exercising
jurisdiction" in these instances.  ECF No. 12 at 3 (emphasis added).  Contrary to Mrs. Martin's phrasing,
§ 1367(c) states that federal courts "*may* decline to exercise jurisdiction," making clear that the court's
decision is discretionary.  28 U.S. Code § 1367(c).  *See also Merrifield v. Bd. of Cty. Comm'rs for Cty. of
Santa Fe*, 654 F.3d 1073, 1085 (10th Cir. 2011); *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic*,
582 F.3d 1155, 1172 (10th Cir. 2009).  The Tenth Circuit has held that federal courts "should" decline to
exercise supplemental jurisdiction when no federal claims remain.  *See, e.g.*, *Bauchman v. W. High Sch.*,
132 F.3d 542, 549 (10th Cir. 1997).  But that is not the case here.

Mrs. Martin primarily relies on *Roe v. Cheyenne Mountain Conference Resort, Inc.*, in which the Tenth Circuit found that the district court should have declined to exercise supplemental jurisdiction over plaintiff's invasion of privacy claim.  124 F.3d 1221, 1236 (10th Cir. 1997).  In *Roe* the plaintiff raised the "intrusion upon seclusion" theory of invasion of privacy, which was undecided in Colorado at the time, and, significantly, all federal claims had "dropped out of the picture."  *Id.* at 1237.  The Tenth Circuit concluded that the district court should have remanded because the state law claim met the criteria of both § 1367(c)(1) and (c)(3), and because there were "other compelling reasons for declining to exercise supplemental jurisdiction since this delicate privacy law area [was] in transition."  *Id.*

Similarly, the Tenth Circuit has reversed district court decisions declining to remand several other times when all federal claims were dismissed, and only state law claims survived. *See, e.g.*, *Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *Aery v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 696 F. App'x 360, 362 (10th Cir. 2017) (unpublished).  In *Merrifield v. Bd. of Cty. Comm'rs for Cty. of Santa Fe*, the Tenth Circuit again found that two issues, the complex issue of state law and dismissal of all federal claims, warranted remand to state court.  654 F.3d 1073, 1085 (10th Cir. 2011); *see also Birdwell v. Glanz*, 790 F. App'x 962, 964 (10th Cir. 2020) (unpublished) (same).  However, I can find no case, and Mrs. Martin has presented none, in which the Tenth Circuit found that remand to state court was required when federal claims still remained, but the parties alleged that the issue raised a complex issue of state law.

The decisions of other district courts in this circuit counsel against Mrs. Martin's request. In *The Arc of The Pikes Peak Region v. National Mentor Holdings, Inc.*, Judge Blackburn noted that "[t]he fact that an issue has not been decided by a state court, alone, does not make that issue novel." No. 10-CV-01144-REB-BNB, 2011 WL 1047222, at *2 (D. Colo. Mar. 18, 2011). "Rather, I conclude that, for purposes of § 1367(C)(1), novelty requires that the legal issue in question, in the context of legal issues generally, be so unusual or difficult that analysis by a state court in the first instance is preferable." *Id.* "[S]imply because certain issues involved in plaintiff's state law claims have been left unresolved by [state] courts does not make those issues novel or complex." *Pae v. City of Lawton*, No. CIV-16-1198-M, 2017 WL 168910, at *2 (W.D. Okla. Jan. 17, 2017); *see also Bain v. Cont'l Title Holding Co.,* No. 16-2326-JWL, 2016 WL 4415363, at *1 (D. Kan. Aug. 19, 2016) (finding that gaps in case law do not render a question novel or complex for the purposes of § 1367(c)).

Though Mrs. Martin may be correct that Colorado courts have yet to address a failure to promote claim in which the job vacancy was not yet posted, she has not shown that this issue is unusual or complex such that this Court is ill-equipped to address it. Indeed, CADA claims are particularly ill-suited for such an argument, as they are routinely analyzed under federal Title VII standards. *See, e.g.*, *Lawley*, 36 P.3d at 1253; *Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) ("Colorado and federal law apply the same standards to discrimination claims.").

Finally, I note that "[t]he Supreme Court has instructed us that federal courts should consider the propriety of exercising supplemental jurisdiction 'in each case, and at every stage of

the litigation.'" *Cheyenne Mountain*, 124 F.3d at 1237 (quoting *Carnegie–Mellon University*, 484 U.S. at 350). If things change, a complaint is amended, this Court dismisses federal claims, or it becomes clear that Colorado courts should have a chance to address the issues in this case, the Court may reconsider this decision. But for now, plaintiff's motion is denied.

## DEFENDANT'S MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

Defendant alleges that Mrs. Martin's discrimination claims should be dismissed because she cannot establish the prima facie element that there was an "available position." ECF No. 13 at 2. Defendant also argues that Mrs. Martin's CADA claims are preempted by LMRA § 301, requiring dismissal. *Id.* Finally, defendant argues that Mrs. Martin's Equal Pay Act claim must be dismissed because she has failed to establish that she suffered a disparity in pay, and because her claim is time-barred. *Id.* at 2–3.

Before addressing defendant's arguments for dismissal, I address a concern raised in Mrs. Martin's response that some of the issues raised in defendant's motion are "more appropriate" for the summary judgment stage because the disputes "turn on facts and circumstances . . . not just an analysis based upon existing case law." ECF No. 15 at 3. I disagree that the remaining issues are outside the scope of a motion to dismiss. Defendant's remaining arguments contend that Mrs. Martin has failed to allege elements of her discrimination and Equal Pay Act claims, and that Mrs. Martin's state law claims as stated are preempted by federal law. Such arguments only require examination of the complaint and existing case law and do not require this Court to evaluate disputes of fact.

## A. <u>Available Position</u>

In a typical failure to promote case, a plaintiff must allege a prima facie case showing she "applied for an available position for which she was qualified but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Mrs. Martin does not allege that there was a posted job vacancy for which she applied. ECF No. 15 at 1. Rather she argues that, following numerous federal courts outside this circuit, this Court should not require her to demonstrate this element. *Id.*

In *Mauro v. South New England Telecommunications, Inc.*, the Second Circuit held that in cases where the employer did not post the job vacancies at issue, but the employee expressed interest in promotion to a particular class of positions, the employee was not required to show that she applied for the job. 208 F.3d 384, 387 (2d Cir. 2000). The *Mauro* plaintiff clearly

indicated interest in the type of position, and the employer promised him that he would receive

that position as soon as one became available.  When such a position became available, the

employer did not inform plaintiff and instead filled the position with hand-picked individuals.

*Id.*  The court held that such a scenario could "relieve the plaintiff of the burden of showing that

he applied for the promotion at issue." *Id*; *see also Patel v. City of New York*, 699 F. App'x 67,

69 (2d Cir. 2017) (unpublished) (citing *Mauro*, 208 F.3d at 387, and finding that if plaintiff had

alleged that employer failed to post a notice about the availability of the position, he would have

been relieved of his obligation to apply).

In *E.E.O.C. v. Metal Service Co.*, the Third Circuit held that plaintiffs did "everything

reasonably possible" to alert the employer of their interest in applying for a job which was

sufficient to "satisfy any application requirement necessary for establishing a prima facie case."

892 F.2d 341, 349 (3d Cir. 1990).  The court noted that "relaxation of the application element of

the prima facie case is especially appropriate when the hiring process itself, rather than just the

decision-making behind the process, is implicated in the discrimination claim or is otherwise

suspect." *Id.*

In *Dews v. A.B. Dick Co.*, the Sixth Circuit found an exception to the application element

because "it would be impossible for any plaintiff to meet these requirements if the company

would not allow him to apply for and be considered for the position."  231 F.3d 1016, 1022 (6th

Cir. 2000).  "This exception to the application requirement is significant because in many cases

where discriminatory animus truly is at issue, an employer may simply avoid advertising a

particular opening so as to avoid controversy among affected employees." *Id.*  "[I]n these

10

circumstances, it is sufficient that the plaintiff was passed over despite being qualified for the job." *Id.*; *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 431 (4th Cir. 2004); *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793, 796 (11th Cir. 1988), *opinion amended on reh'g*, 850 F.2d 1549.

Though each of these cases has a distinct fact pattern, together they demonstrate that most circuits allow for an exception to the application requirement when employers fail to post vacancies for which plaintiffs have expressed interest. The Tenth Circuit has not directly addressed the issue, but I agree with the reasoning of the cited cases.

At oral argument, defendant argued that the cases Mrs. Martin cited in her response, including *Mauro*, were distinguishable on their facts. As discussed above, in *Mauro*, as in this case, an employee expressed interest in promotion, but the employer did not post the job vacancy. 208 F.3d at 387. The plaintiffs in both cases allege they were told they would receive the position as soon as it was available. In Mauro, the position eventually became vacant, the plaintiff was not notified, and the position was filled. *Id.* Here Mrs. Martin alleges that the positions were vacant, and the defendant refused to post notice of the vacancy until after she retired. ECF No. 4 at 4. I find that *Mauro* is sufficiently similar for the principles at issue to apply. Further, the weight of case law from other circuits supports the proposition that an application for an available position is not required in circumstances when the plaintiff alleges that the employer purposely obstructed the process.

Here, Mrs. Martin has adequately alleged that she expressed interest in the position to defendant on more than one occasion. ECF No. 4 at 4–5. She has also alleged that defendant

chose not to post the vacancy for the lead pipe fitter position so that she would not get the position. *Id.* at 6-¶17. Therefore Mrs. Martin's case fits within the exception for the prima facie case of failure to promote.

### B. Preemption of State Law Claims

Defendant argues that the LMRA § 301 preempts Mrs. Martin's CADA claims in this case. ECF No. 21 at 2.

In *Caterpillar Inc. v. Williams*, the Supreme Court held that § 301 of the LMRA preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. 386, 394 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)). A claim is preempted under § 301 when "the court would inevitably have to examine [the parties'] rights and obligations under the CBA." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1211 (10th Cir. 2001).

However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). A claim's "mere reference" to a collective bargaining agreement ("CBA") is not enough to invoke preemption. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 (10th Cir. 2004). For instance, § 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. "The test articulated by the Supreme Court in *Allis–Chalmers* for determining whether a state law claim is not independent and thus is preempted by § 301 is

12

'whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.'" *Garley*, 236 F.3d at 1208 (quoting *Allis–Chalmers Corp.*, 471 U.S. at 213).

Defendant argues that Mrs. Martin's CADA claims hinge on the contents of the CBA between PSCo and International Brotherhood of Electrical Workers, Local Union No. 111. ECF No. 21 at 4. Defendant claims that Mrs. Martin's contention that she was "entitled to be promoted" will require examination of "explicit or implied rights derived from the CBA." *Id.* Her alleged entitlement derives from the CBA's requirement that "[i]n all matters relating to promotions. . . . Company will give full consideration to seniority. Provided physical fitness, skill, ability, efficiency and other qualifications related to performance of the job are sufficient, seniority shall govern according to the provisions of this Agreement." ECF No. 21-1. Thus, defendant argues, interpreting Mrs. Martin's entitlement to a promotion will require this Court to interpret whether her experience and past satisfactory job performance constitutes "skill, ability, efficiency and other qualifications," as required by the CBA. The Court will also have to examine the seniority rules in the CBA to determine whether she was "next in line," as alleged.

As part of her prima facie burden, an employment discrimination plaintiff alleging failure to promote must demonstrate that she was qualified for the position at issue. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (listing elements of prima facie case of failure to promote based on racial discrimination); *see also Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1253 (Colo. 2001) (holding that the elements of a CADA claim mirror Title VII). Determining whether Mrs. Martin was qualified for a promotion ordinarily would turn in large

part on whether she met the requirements listed in the CBA.  Mrs. Martin must also show that she was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253 (1981).  On this element, Mrs. Martin's CADA claims allege that she was "entitled to be promoted to the full-time lead pipe fitter position," as she was "next in line" for promotion, and that she was denied on the basis of her sex and race.  ECF No. 4 at 7–8.  If, under the CBA, she was "next in line" for promotion, failure to give her the promotion may give rise to an inference of discrimination.  As phrased, Mrs. Martin's claim "directly relates to either explicit or implied rights derived from the CBA." *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1020 (10th Cir. 1990).

Like retaliatory discharge claims, which courts have frequently held are not preempted by § 301, *see, e.g.*, *Lingle*, 486 U.S. at 401, *Garley*, 236 F.3d at 1209 (listing cases), failure to promote claims also require factual inquiry into an employer's motivation for a particular action. Unlike retaliatory discharge claims, however, Mrs. Martin's claims go beyond "purely factual questions" about the conduct or motivation of the employer.  In theory they could turn on the meaning of provisions in the CBA.  *Garley*, 236 F.3d at 1209 (quoting *Lingle*, 486 U.S. at 401). In some failure to promote claims "an analysis of whether [defendant] acted properly or not will inevitably require an analysis of what the CBA permitted." *Id.* at 1210 (quoting *Mock v. T.G. & Y. Stores, Co.*, 971 F.2d 522 (10th Cir. 1992)).

However, during oral argument defense counsel acknowledged that Mr. Martin was "next in line," and informed the Court that had Ms. Martin just waited another two or three months instead of retiring, she would have gotten the position.  The clear inference is that Ms. Martin

14

was considered to be qualified to be a lead pipefitter, an inference that is also supported by the fact that she had at times performed the duties of lead pipefitter in the past.

Therefore, it is not clear to the Court what parts of the CBA are relevant to the resolution of her claims.  It is undisputed that the CBA requires that a job vacancy be posted, but as I have said, the allegation that PSCo intentionally refused to post a vacancy in order to deprive Ms. Martin of the opportunity to obtain the position obviates the need for that requirement.  The CBA would be relevant to a determination of whether Ms. Martin was qualified for the position and whether she was "next in line" for the position, but those facts do not appear to be disputed. Therefore, while the terms of the CBA speak to issues pertinent to the case, the undisputed facts render those terms moot in this instance.  *See Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1153–54 (10th Cir. 2005) (plaintiff's claim was not inextricably intertwined because "it is not necessary to look to collective bargaining agreements" in order to decide the claim, but rather only to inquire "into any retaliatory motive of [defendants].").

### C.  Equal Pay Act Claim

29 U.S.C. § 206(d)(1) prohibits disparities in pay between employees of opposite sex

on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

15

Defendant argues that Mrs. Martin has not established a claim under the statute because the employees with whom she alleges a pay disparity occupied higher paying positions.  ECF No. 13 at 3.

Mrs. Martin's third cause of action states that "defendant paid higher wages to employees of the opposite sex.  [Randy] Ohelert and [Bob] Ramsey (both male) were paid at least $43.68 for every hour they worked.  Mrs. Martin (female) was paid $40.38 for about half the hours she worked." ECF No. 4 at 9.  She alleges that "Ohelert, Ramsey and Mrs. Martin were performing equal work on jobs requiring equal skill, effort and responsibility."  *Id.*  However, Mrs. Martin also acknowledges that Mr. Ohelert and Mr. Ramsey were employed full-time as lead pipe fitters, while she held the title of pipe fitter and was asked to perform lead pipe fitter duties on a part-time basis.  *Id.* at 4.  She further acknowledges that when she performed lead pipe fitter duties she was paid the same rate as Mr. Ohelert and Mr. Ramsey.  *Id.* at 10 ("Mrs. Martin was paid $43.68 per hour when assigned to work temporarily as lead pipe fitter.").

In her response to defendant's motion to dismiss Mrs. Martin does not argue that she sufficiently stated a claim under § 206(d).  *See* ECF No. 15.  At oral argument Mrs. Martin did not contest that she had not alleged an Equal Pay Act claim.  ECF No. 28.  Therefore, I grant defendant's motion as to Mrs. Martin's third cause of action.

## ORDER

1. Plaintiff's Motion to Remand to State Court All State Law Claims, ECF No. 12, is DENIED.

2. Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  The motion is denied as to plaintiff's First and Second Causes of Action but granted as to plaintiff's Third Cause of Action.

DATED this 21st day of July, 2020.

BY THE COURT:

_____

R. Brooke Jackson

United States District Judge